**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**COURT FILE NO.: 1:19-cv-01209-REB-KMT**

Elizabeth Lupia,
    Plaintiff

v.

Medicredit, Inc.,
    Defendant

_____

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

## I.   Introduction

St. Francis Medical Center retained Defendant Medicredit, Inc. ("Defendant") to collect a debt from Plaintiff Elizabeth Lupia ("Plaintiff")—a debt that she did not owe. Despite Plaintiff sending Defendant a dispute letter detailing that she did not owe the Debt and requesting that it not call her, Defendant subsequently continued its debt collection efforts by calling her and leaving a voicemail requesting that she call its office. By calling Plaintiff after it was put on notice that she did not want Defendant to call her, Defendant violated Section 1692c(c) of the FDCPA. In addition, by falsely representing that Plaintiff owed the debt, Defendant violated Section 1692e(2)(A) and e(10).

Defendant's collection call also violated Section 1692g(b). When a consumer disputes a debt in writing, the debt collector must cease all collection activity until it provides the consumer with verification of the debt. Here, Defendant did not provide Plaintiff with verification of the debt at any point. After the phone call, Defendant sent Plaintiff a letter that attempted to collect the debt.

1

II.     **Statement of material facts.**

On April 5, 2017, Plaintiff received medical services from St. Francis Medical Center ("SFMC"). Doc. 1 at ¶ 19. Prior to her April 5, 2017 procedure, Plaintiff informed SFMC that the bills should be sent directly to Liberty Health Share ("LHS"). *See* Declaration of Ms. Lupia at ¶ 1, attached as Exhibit A. LHS is an alternative to traditional health insurance wherein members, such as Plaintiff, make monthly contributions which are then used to pay for the medical expenses of other members in need. Doc. 1 at ¶ 18. As instructed, SFMC submitted Plaintiff's medical bill of $21,893 to LHS for payment. *Id.* at 20. In July 2017, LHS subsequently tendered payment to SFMC in the amount of $7,154.36. *Id.* at 21; *see* July 17, 2017 Check, attached as Exhibit B at 2. The back of LHS's check to SFMC stated: "Payment is tendered on behalf of the cost sharing ministry member in satisfaction and full settlement of all charges for facility medical bills submitted on stated account." Exhibit B at 3. Included with LHS's check was a document that stated, in relevant part:

> Any Facility Provider accepting payment from the cost sharing ministry program must agree to be bound by all of the rules and provisions in the program's cost sharing guidelines, and payment of member sharing payments is specifically conditioned upon such agreement. Any medical expense from the program is tendered in full and final satisfaction of charges for medical services and treatment rendered, and deposit by recipient shall constitute and evidence accord and satisfaction of any discrepancy between expenses hereby paid and amounts charged for such services and treatment.

Exhibit B at 4.

On July 20, 2017, SFMC applied LHS's $7,154.36 payment to Plaintiff's account, thus accepting LHS's payment as full and final satisfaction of Plaintiff's April 5, 2017 medical services. Doc. 1 at 23; *see* SFMC's September 19, 2017 Bill, attached as Exhibit C. However, SFMC attempted to collect the remaining $14,739.25 (the "Debt") from Plaintiff. *See* Exhibit C. Because

Plaintiff did not owe the Debt, she refused to make any payments to SFMC. *See* Exhibit A at ¶ 3. SFMC subsequently retained Defendant to collect the Debt from Plaintiff. Doc. 1 at 23.

In connection with the collection of the Debt, Defendant sent Plaintiff a letter dated April 25, 2018. *See* Doc. 1-1. Defendant's April 25, 2018 letter was its initial communication with Plaintiff with respect to the Debt. Doc. 1 at ¶ 27; Doc. 6 at ¶ 27. In response, Plaintiff sent Defendant a dispute letter dated May 1, 2018 (the "Dispute Letter") explaining that she did not owe the Debt because SFMC had accepted LHS's payment as consideration in full of the $21,893 balance. *See* Doc. 1-2 at 2. Included with Plaintiff's Dispute Letter was the explanation of benefits she received from LHS stating that its payment is conditioned on the provider's acceptance of such payment as consideration in full for services and treatment rendered. *Id.* at 3. Plaintiff's Dispute Letter also demanded that Defendant cease all telephone calls to Plaintiff. *Id.* at 2.

Defendant received Plaintiff's Dispute Letter on May 7, 2018. *See* Defendant's Stamped Copy of Plaintiff's Dispute Letter, attached as Exhibit D. Despite being notified of Plaintiff's dispute *and* demand to cease all telephone communications, Defendant called Plaintiff on May 8, 2018 and left her a voicemail. *See* Defendant's Call History, attached as Exhibit E. Defendant's May 8, 2018 phone call was placed in connection with the collection of the Debt. *See* Defendant's Discovery Responses, attached as Exhibit F at 3 (admitting in its Response to Request for Admission No. 3 that it placed a phone call to Plaintiff on May 8, 2018 in connection with the collection of the debt). Plaintiff received and listened to Defendant's voicemail on May 8, 2018. *See* Exhibit A at ¶ 5. Defendant's May 8, 2019 voicemail stated:

> Hello, we are calling from Medicredit on behalf of St. Francis Medical Center. This is a call from a debt collector. Please return our call at 800-242-6813, Monday through Friday during normal business hours. Thank you.

*See* Defendant's May 8, 2018 Voicemail, attached as Exhibit G; Exhibit A at ¶ 4.

Defendant then sent Plaintiff a subsequent collection letter dated May 16, 2018. *See* Defendant's May 16, 2018 Letter, attached as Exhibit H. Defendant's May 16, 2018 letter states "Balance Due on File: $14,739.25," provides the account number, invites Plaintiff to call its office, states Defendant's hours of operation, and informs Plaintiff that "[t]his communication is from a debt collector." Exhibit H. Defendant did not provide Plaintiff with verification of the Debt prior to placing its May 8, 2018 telephone call to Plaintiff or at any point thereafter. *See* Doc. 1 at ¶ 35; Doc. 6 at ¶ 35.

### III. Standard of review

"Summary judgment is warranted when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1102 (D. Colo. 2015) (quoting Fed. R. Civ. P. 56(a)). "A dispute is 'genuine' if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party." *Id.* (citing *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997)). "When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party." *Id.*

### IV. The FDCPA is a strict liability statute, liberally construed in favor of the consumer, and interpreted in accordance with an objective "least sophisticated consumer" standard.

"Congress enacted the FDCPA to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gill v. Credit Bureau of Carbon County*, 14-CV-01888-KMT, 2015 WL 2128465, at *2 (D. Colo. May 5, 2015) (quoting 15 U.S.C. § 1692(e)). In

4

order to best implement Congress' purposes for enacting the FDPCA, courts have stated that the FDCPA "is a remedial statute [that] should be construed liberally in favor of the consumer." *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002).  "In addition, the FDCPA does not typically require a plaintiff to prove that a debt collector acted intentionally when it violated the act and, as a result, it is often described by courts as a strict liability statute."  *Gill,* 2015 WL 2128465, at *2 (citing *Johnson,* 305 F.3d at 1122 n. 15).  "Because the FDCPA is a strict liability statute, Plaintiff need demonstrate only one violation . . . to be entitled to a favorable judgment." *Rhodes v. Olson Associates, P.C.*, 83 F. Supp. 3d 1096, 1103 (D. Colo. 2015) (citing *Doshay v. Global Credit Collection Corp.,* 796 F. Supp. 2d 1301, 1303–04 (D. Colo. 2011)).

"In determining whether a debt collection practice is deceptive or misleading, the fact-finder must view the practice "objectively from the perspective of the 'least sophisticated consumer.' " *D'Avanzo v. Global Credit & Collection Corp.*, No. 10-CV-01572-RPM-CBS, 2011 WL 2297697, at *2 (D. Colo. Apr. 18, 2011) *report and recommendation adopted*, 2011 WL 2292190 (D. Colo. June 9, 2011); *see also Ferree v. Marianos*, 129 F.3d 130, at *1-2 (10th Cir. 1997) (unpublished) (employing "least sophisticated consumer" standard, under which "the test is how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives") (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)); *Sowers v. Wakefield & Assocs.*, No. 09-CV-02873-BNB-MEH, 2010 WL 3872901, at *4 (D. Colo. Sept. 29, 2010) (least sophisticated consumer standard applies to FDCPA cases).

**V.     Plaintiff is a "consumer," Defendant is a "debt collector," and the subject obligation is a "debt," as defined by the FDCPA.**

For Defendant to be liable under the FDCPA, Plaintiff "must show that (1) [she] is a 'consumer' within the meaning of 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction

5

entered into primarily for personal, family, or household purposes, as required by 15 U.S.C. § 1692a(5); (3) Defendant is a 'debt collector' within the meaning of 15 U.S.C. § 1692a(6); and (4) Defendant, through its acts or omissions, violated a provision of the FDCPA." *Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1073 (D. Colo. 2015). Here, it is undisputed that Plaintiff is a "consumer" as defined by 15 U.S.C § 1692a(3) and that Defendant was attempting to collect a "debt" as defined by 15 U.S.C. § 1692a(5). *See* Doc. 1 at ¶ ¶ 11-12; Doc. 6 at ¶ ¶ 11-12.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C § 1692a(6).  Defendant admits that the principal purpose of its business is debt collection, and that it regularly collects debts allegedly owed to others. *See* Doc. 1 at ¶ ¶ 16-17; Doc. 6 at ¶ ¶ 16-17. Therefore, Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## VI.   Defendant violated 15 U.S.C § 1692c(c) by calling Plaintiff after receiving her letter demanding all calls cease.

The FDCPA provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or *that the consumer wishes the debt collector to cease further communication with the consumer*, the debt collector shall not communicate further with the consumer with respect to such debt . . .

15 U.S.C. § 1692c(c) (emphasis added).

In connection with the collection of the Debt, Defendant sent Plaintiff initial written communication dated April 25, 2018. Doc. 1 at ¶ ¶ 25, 27; Doc. 6 at ¶ ¶ 25, 27. After receiving the April 25, 2018 letter, Plaintiff sent Defendant her Dispute Letter which stated, in relevant part:

6

"Please note that I am requesting that *all telephone calls regarding this matter cease immediately*. You may feel free to contact me in writing with any additional communications regarding this issue." Doc. 1-2. Defendant received Plaintiff's Dispute Letter no later than May 7, 2018. *See* Exhibit D (Dispute Letter and envelope stamped: "RECEIVED May 7, 2018"). Thus, as of May 7, 2018, Defendant was on notice of Plaintiff's demand that it cease calling her and was prohibited from placing any additional calls to her. 15 U.S.C. § 1692c(c) ("If such notice from the consumer is made by mail, notification shall be complete upon receipt."); *see also Bishop v. I.C. Sys., Inc.*, 713 F. Supp. 2d 1361, 1366 (M.D. Fla. 2010) ("Notification to the debt collector is complete upon receipt.") (quotations omitted).

Instead of *immediately* ceasing all telephone calls to her as required by the FDCPA, Defendant called Plaintiff the next day—May 8, 2018—and left a voicemail in connection with the collection of the Debt:

> Hello, we are calling from Medicredit on behalf of St. Francis Medical Center. This is a call from a debt collector. Please return our call at 800-242-6813, Monday through Friday during normal business hours. Thank you.

Exhibit G; Exhibit A at ¶ 4.

Because notification of Plaintiff's cease and desist letter was complete on May 7, 2018, and Defendant called Plaintiff on May 8, 2018, Defendant plainly violated Section 1692c(c). *See Hilgenberg v. Elggren & Peterson*, No. 2:13-CV-1086, 2015 WL 4077765, at *6 (D. Utah July 6, 2015) (granting summary judgment in favor of the plaintiffs finding that "[t]he letter clearly demanded Elggren & Peterson to stop calling . . . . Each phone call that Elggren & Peterson made after receiving the Hilgenbergs' letters violated Section 1692c(c)."); *Seifried v. Portfolio Recovery Assocs., LLC*, No. 12-CV-0032-JHP, 2013 WL 6185478, at *5 (E.D. Okla. Nov. 25, 2013) (finding "there is no dispute as to whether PRA violated § 1692c(c) as PRA contacted

Plaintiff after receipt of the Cease and Desist Letter, and notice was complete at the time PRA received the letter pursuant to § 1692c(c)" where the collector received a cease and desist letter from the consumer's counsel at 10:37 a.m. and called the consumer later that same day).

What's more, Defendant's May 8, 2018 voicemail does not fall within the confines of any of the three exceptions for communicating with a consumer after receiving a demand to cease communications:

> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. . . .

15 U.S.C. § 1692c(c).

Section 1692c(c) "not only states that a debt collector may not make a demand for payment following a cease-communication letter, *but also prohibits communication of any kind other than those falling within the three exceptions.*" *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 398 (6th Cir. 1998) (emphasis added). Defendant's voicemail does not advise Plaintiff that debt collection activities on the Debt are being terminated, notify Plaintiff that Defendant may invoke specified remedies that are ordinarily invoked or are applicable, or notify Plaintiff that Defendant intends to invoke a specified remedy. Exhibit G. Instead, it solicits a return call in an attempt to collect the Debt. *Id.*

Accordingly, because Defendant called Plaintiff after it received her written demand to cease all telephone calls and left Plaintiff a voicemail that does not fall within any of the

expressed exceptions provided for in 15 U.S.C. § 1692c(c)(1)-(3), the Court should enter summary judgment in favor of Plaintiff on Count II.

## VII. Defendant violated 15 U.S.C. § 1692g(b) by failing to cease collection after receiving Plaintiff's timely written dispute.

"In the event a consumer disputes any portion of a debt being collected, § 1692g(b) requires that 'the debt collector *shall cease collection of the debt*, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector.'" *Maynard v. Cannon*, 401 F. App'x 389, 396 (10th Cir. 2010) (quoting 15 U.S.C. § 1692g(b)) (emphasis in original).

Courts throughout the country have uniformly held that the continuation of collection activities, after the receipt of a dispute but without first mailing verification of the debt to the consumer, is a violation of Section 1692g(b). *See Scott v. Trott Law, P.C.,* No. 18-1051, 760 F. App'x 387, 393 (6th Cir. 2019) (the "failure to stop [publication of foreclosure notices] after [the collector] received the Dispute Letter violated provisions of § 1692g(b) of the FDCPA"); *Cook v. Green Tree Servicing, LLC*, 154 F. Supp. 3d 742, 750 (S.D. Ill. 2016) ("[the collector] violated § 1692g(b) of the FDCPA by failing to cease collection of the debt until [the collector] mailed verification of the debt to the Plaintiffs"); *Martinez v. Johnson*, No. 2:11CV157-DN, 2013 WL 1031363, at *11 (D. Utah Mar. 14, 2013) ("The FDCPA is a strict liability statute. Therefore, the defendants' initiation of collection activities without first providing verification information violated 15 U.S.C. § 1692g(b)."); *Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 997 (D. Ariz. 2010) ("the FDCPA is a strict liability statute, so [the collector's] recommencement of collection activities without verification violated 15 U.S.C. § 1692g(b) as a matter of law").

Within the thirty day dispute period provided by Section 1692g(a), Plaintiff sent Defendant the Dispute Letter which it received no later than May 7, 2018. *See* Exhibit D (Dispute Letter and envelope stamped: "RECEIVED May 7, 2018"). Thus, as of May 7, 2018, Defendant was required to cease collection of the Debt until obtaining and mailing verification to Plaintiff. *See* 15 U.S.C. § 1692g(b). It did not. In connection with the collection of the Debt, Defendant called Plaintiff the very next day and left her a voicemail in violation of Section 1692g(b). Exhibit G; *see* Exhibit F at 3 (Defendant's response to Plaintiff's Request for Admission No. 3 admitting that "Defendant placed a phone call to Plaintiff on May 8, 2018 in connection with the collection of the debt.").

Subsequently, Defendant sent Plaintiff another collection letter dated May 16, 2018. *See* Exhibit H. While Defendant's May 16, 2018 letter acknowledges receipt of Plaintiff's Dispute Letter, it also provides the "Balance Due on File," the account number, invites Plaintiff to call Defendant, and advises that the communication is from a debt collector. *Id.* Upon receiving the letter, the least sophisticated consumer would understand it as another attempt to collect the Debt.

While Defendant may argue that the letter does not explicitly demand payment, courts have held that communications do not need to explicitly demand payment to be considered collection activity. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014) ("It is reasonable to infer that an entity that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt."); *Steinkirchner v. Gordon*, No. 2:19-CV-01241, 2020 WL 549087, at *4 (W.D. Pa. Feb. 4, 2020) ("Communications need not include an explicit demand for payment to be 'debt collection' activity. Covered activity could also consist of

10

'communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information.') (quoting *McLaughlin*, 756 F.3d at 245-46); *Sharp v. Premiere Credit of N. Am., LLC*, No. 3:16-CV-849-J-39PDB, 2017 WL 11025885, at *2 (M.D. Fla. Jan. 30, 2017), *report and recommendation adopted*, No. 3:16-CV-849-J-39PDB, 2017 WL 11025818 (M.D. Fla. Mar. 6, 2017) (same). "[W]hen the content and context are analyzed objectively, [Defendant's May 16] letter was an attempt to collect a debt, so [Defendant] failed to 'cease collection,' thereby violating § 1692g(b)." *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 898 (7th Cir. 2015). Accordingly, the Court should enter summary judgment in favor of Plaintiff on Count I.

**VIII.   Plaintiff is entitled to summary judgment on Defendant's bona fide error defense to her claims under 15 U.S.C. § § 1692c(c) and 1692g(b).**

A debt collector's liability under the FDCPA can be excused only if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). "The bona fide error defense is an affirmative defense that insulates debt collectors from liability even when they have violated the FDCPA." *Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006). "An FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Id*. "The failure to meet any one of those three requirements is fatal to the defense." *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009).

**A.   Defendant cannot show it acted unintentionally.**

To meet the unintentional element of the bona fide error defense, a debt collector must show—not that it did not intend to violate the FDCPA—but that its conduct was unintentional.

11

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611-12 (2010). The Court held that "an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." *Id.* at 1612. "Following *Jerman,* the intentional prong of the bona fide error defense can no longer be whether a defendant specifically intended its actions to violate the FDCPA." *Allen v. Checkredi of Kentucky, LLC*, No. CIV.A. 09-103-DLB, 2010 WL 4791947, at *9-11 (E.D. Ky. Nov. 17, 2010) ("[W]hether Defendant intended to violate the FDCPA is immaterial under *Jerman*."). Here, Defendant made an intentional decision to call Plaintiff on May 8, 2018—the day after receiving Plaintiff's letter. *See* Exhibit F at 3 (Defendant's response to Request for Admission No. 3 admitting to calling on May 8, 2018 in connection with the collection of the debt and No. 4 denying Defendant was required to obtain and mail verification before calling). Likewise, Defendant made the intentional decision to mail its May 16, 2018 letter prior to obtaining and mailing verification of the Debt. Thus, Defendant cannot prove it acted unintentionally.

**B.      Defendant cannot show it committed a bona fide error.**

"Bona fide," as utilized by the FDCPA, "means that the error resulting in a violation was made in good faith; a genuine mistake, as opposed to a contrived mistake." *Edwards*, 584 F.3d at 1353. The purpose of the bona fide error defense is to protect debt collectors in cases of inadvertent clerical errors. *Baker v. GC Services Corp.*, 677 F.2d 775, 779 (9th Cir. 1982); *see also Holton v. Huff*, No. 3:10-CV-2396, 2012 WL 1354024, at *3 (M.D. Pa. Apr. 16, 2012) ("Only clerical errors have been recognized as falling within the *bona fide* error exception to liability"); *Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996) ("Generally the term 'error' is limited to clerical mistakes, such as minor numerical mistakes in transposing numbers.").

Here, Defendant asserts no clerical error that it made, which led to the improper collection contacts. Quite the contrary, Defendant admits to purposefully placing the May 8, 2018 call and sending the May 16, 2018 letter. Instead, Defendant posits that it was not required to cease collection from its misunderstanding of the law. *See* Exhibit F at 3 (Defendant's response to Request for Admission No. 3 admitting to calling on May 8, 2018 in connection with the collection of the debt and No. 4 denying Defendant was required to obtain and mail verification before calling).

What's more, Defendant waived the defense by failing to identify any alleged error in response to Plaintiff's discovery requests. When asked to identify and describe any errors, Defendant identified no errors and stated only that "any violation would have been the result of incorrect information provided by the original creditor." Exhibit F at 15 (Defendant's response to Interrogatory No. 11.). When asked to identify the principal facts of its defense, Defendant merely raised baseless objections and referred back to its response to Interrogatory 11. Exhibit F at 15 (Defendant's response to Interrogatory No. 13.). By failing to identify any applicable error in its discovery responses, Defendant has waived the defense and is barred from now identifying any alleged error it failed to identify during discovery.

### C. Defendant cannot show it maintained any procedures reasonably adapted to avoid the specific error at issue.

"As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006); *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008). "If the bona fide error defense is to have any meaning in the context of a strict liability statute, then

13

a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Reichert*, 531 F.3d at 1007. Even if there were a clerical error that existed--there was not—Defendant has failed to show that it maintained any procedures and failed to explain how those procedures were reasonably adapted to avoid such an error. *See Dutton v. Wolhar*, 809 F. Supp. 1130, 1138 (D. Del. 1992) ("Mere inadvertency is not sufficient to provide a defense. Defendant has the burden of demonstrating the maintenance of such procedures.").

Just as it failed to identify any errors when requested via written discovery, Defendant failed to identify or produce any applicable policies or procedures. *See* Exhibit F at 16 (responding to Interrogatory 12 stating none exist and Interrogatory 13 refusing to detail any principal facts for its defense); *id.* at 10 (identifying no policies or procedures in response to Request for Production No. 8). Of course, it had no reason to identify or produce policies and procedures when it had not identified any error such policies or procedures would prevent.

Here, none of Defendant's responses addressed whether Defendant's violations of § § 1692 c(c) and 1692g(b) were unintentional, a bona fide error, and made despite maintaining procedures reasonably adapted to avoid such error. Thus, Defendant has not established that it is entitled to a bona fide error defense to Plaintiff's claims under § § 1692c(c) and 1692g(b). Accordingly, Plaintiff is entitled to summary judgment on Defendant's bona fide error defense.

### IX. Plaintiff did not owe the Debt; thus, Defendant violated 15 U.S.C. §§ 1692e(2)(A) and e(10) by attempting to collect it from her.

The FDCPA forbids debt collectors from using false, deceptive, or misleading means in connection with the collection of any debt, including the "false representation of—the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Thus, the plain-language of the

FDCPA makes it clear that any false representation as to the amount of the debt is sufficient to show a violation of the FDCPA. A debt collection practice may violate the FDCPA even if it does not fall within specific conduct enumerated by the FDCPA. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). Congress, recognizing that it would be impossible to foresee every type of deceptive collection misbehavior, expressly included in the FDCPA a catchall provision, prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10); *see Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006) ("[O]ne action can give rise to multiple violations of the Act . . . we (as well as other courts) routinely have allowed debtors to pursue causes of actions under multiple sections of the FDCPA, even though each violation was based upon the same circumstances."). The test for deception under section 1692e is the "the capacity of the statement to mislead; evidence of actual deception is unnecessary." *United States v. National Financial Services, Inc.*, 98 F.3d 131 (4th Cir. 1996).

### A.     Defendant falsely represented that Plaintiff owed the Debt.

District and circuit courts around the country have held that even "a single act seeking payment from the wrong individual has been sufficient to constitute a violation." *Gamby v. Equifax Info. Servs. LLC*, 462 F. App'x 552, 556-57 (6th Cir. 2012); *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1188 (D. Utah 2019) (stating that the collector's repeated efforts to collect a debt from a non-debtor violated 15 U.S.C. § 1692e(2)(A)); *Christopher v. RJM Acquisitions LLC*, No. CV-13-02274-PHX-JAT, 2015 WL 437541, at *4 (D. Ariz. Feb. 3, 2015) (stating that "most, if not all, courts to consider this issue have held that 'an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt.'"); *Fritz v. Resurgent*

*Capital Servs., LP*, 955 F. Supp. 2d 163, 172 (E.D.N.Y. 2013) (stating that misrepresenting the amount of the debt is specifically prohibited by the FDCPA).

On April 5, 2017, Plaintiff received medical services from SFMC which were covered by LHS. In July 2017, LHS submitted payment to SFMC that was proffered as full and final satisfaction of the Debt. *See* Exhibit B at 3 ("Payment is tendered on behalf of the cost sharing ministry member in satisfaction and full settlement of all charges for facility medical bills submitted on stated account."). Although SFMC accepted the payment, it attempted to collect the remaining balance from Plaintiff. *See* Exhibit C at 2-3 (applying LHS's $7,154.36 payment to Plaintiff's account). When Plaintiff refused to remit payment, SFMC retained Defendant to pursue collection efforts against Plaintiff. In response to Defendant's initial collection letter dated April 25, 2018, Plaintiff sent the Dispute Letter detailing that SFMC had already been paid in full by LHS. Doc. 1-2. Plaintiff included with the Dispute Letter documentation from LHS evidencing that its payment to SFMC was accepted as full and final satisfaction of the Debt. *Id.*

Despite receiving Plaintiff's detailed Dispute Letter, Defendant continued its attempts to collect the Debt from Plaintiff. On May 8, 2018, Defendant called Plaintiff and left her a voicemail requesting she return the call. Exhibit G. Defendant then sent her a collection letter, dated May 16, 2018, that again falsely represented that Plaintiff owed a balance. Exhibit H. Here, Defendant continued its efforts to collect the Debt from Plaintiff. By representing that Plaintiff owed the Debt when she did not, Defendant violated the Section 1692e(2)(A) and Plaintiff is entitled to summary judgment on Counts III and IV.

16

### B. Defendant's false representation that Plaintiff owed the Debt is a material misrepresentation that has the capacity to affect the least sophisticated consumer's decision on how to respond to the collection activity.

Any attempt to collect on a debt which a consumer does not owe is material because the consumer runs the risk of paying a debt *which she does not owe*. Here, upon receiving Defendant's collection letter, Plaintiff disputed the Debt and informed Defendant that she did not owe it. *See* Doc. 1-2. Despite receiving Plaintiff's Dispute Letter, Defendant continued its collection attempts. Exhibit G; *see* Exhibit F at 3 (admitting in its response to Request for Admission No. 3 that it placed a phone call to Plaintiff's on May 8, 2018 in connection with the collection of the debt); *see also* Exhibit H (May 16, 2018 debt collection letter). It is entirely possible for a least sophisticated consumer—who does not owe a debt, disputes, but continues to be repeatedly pursued for payment—to become confused as to whether she actually owed the debt. Receiving multiple communications by a debt collector may also prompt a least sophisticated consumer to make a payment—indeed, the very purpose for which Defendant continued its collection attempts. Because Defendant's misrepresentation has the capacity to "impact the least sophisticated consumer's decisions with respect to a debt," it is material. *Hudspeth v. Capital Mgmt. Servs., L.P.*, No. 11-CV-03148-PAB-MEH, 2013 WL 674019, at *4 (D. Colo. Feb. 25, 2013).

Furthermore, in looking at a collection letter on its face, there is no reason a least sophisticated consumer would be aware that the amount sought in the collection letter was not accurate or that he or she did not owe it. "[A]n unsophisticated consumer could also be shaken by a debt collector's inaccurate representation of a debt, even if the consumer knew she did not owe what the collector said that she did." *Crafton v. Law Firm of Jonathan B. Levine*, 957 F. Supp. 2d 992, 997 (E.D. Wis. 2013) ("[T]he inaccurate amount of the debt owed was material"

and "[e]ven an unintentional misrepresentation violates 15 U.S.C. § 1692e(2)(A).") (internal citation omitted); *see also Christopher v. RJM Acquisitions LLC,* No. CV-13-02274-PHX-JAT, 2014 WL 437541, at *4 (D. Ariz. Feb. 3, 2015) ("While many—perhaps most—consumers would not be confused by a collection letter alleging a debt they did not owe, the law requires that debt collectors tailor their practices to protect even the most uninformed, naïve, unsophisticated consumer.  Especially when faced with the intimidating nature of the debt collection process, such a consumer could question his or her own recollection of events and wonder whether he or she does, in fact, owe the debt."). Thus, Defendant's violations were material.

## X.     Conclusion

Plaintiff sent Defendant a timely written dispute of the Debt, also demanding Defendant cease further telephone calls. Despite her explicit instruction not to call her, Defendant called her the very next day to collect the Debt in violation of Section 1692c(c). And instead of ceasing collection until obtaining and mailing Plaintiff verification of the Debt, Defendant continued its collection efforts through its voicemail and another collection letter in violation of Section 1692g(b). Further, despite Plaintiff not owing the Debt as a result of SFMC accepting payment "in satisfaction and full settlement of all charges," Defendant continued attempting to collect the Debt from herin violation of Sections 1692e(2)(A) and e(10).  Accordingly, Plaintiff is entitled to summary judgment.

Dated: February 21, 2020

Respectfully submitted,

                                            s/ Amorette Rinkleib
                                            Amorette Rinkleib
                                            Thompson Consumer Law Group, PLLC
                                            5235 E. Southern Ave., D106-618

            Mesa, AZ 85206
            602-899-9189
            866-317-2674 facsimile
            arinkleib@ThompsonConsumerLaw.com

            Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on February 21, 2020, the foregoing Motion to for Summary Judgment was filed using the CM/ECF system of the Court for the District of Colorado which will send notification of such filing to counsel of record as follows:

Jacob F. Hollars
Spencer Fane, LLP
1700 Lincoln St., Ste. 200
Denver, CO 80203
jhollars@spencerfane.com

            s/ Amorette Rinkleib
            Amorette Rinkleib