**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 19-cv-01209-REB-KMT

ELIZABETH LUPIA,

     Plaintiff,

v.

MEDICREDIT, INC.,

     Defendant.

---

## ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

     The matters before me are (1) **Defendant Medicredit, Inc.'s Motion for Summary Judgment** [#20],[1] filed February 18, 2020;(2) **Plaintiff's Motion for Summary Judgment** [#22], filed February 21, 2020; and (3) **Plaintiff's Motion for Leave To File Surreply or, in the Alternative, for Leave To Supplement Her Response to Defendant's Motion for Summary Judgment** [#28], filed April 1, 2020. As expatiated below, I grant defendant's motion in part and deny it in part and grant plaintiff's summary judgment motion in part and deny it in part. I deny plaintiff's motion to file a surreply as moot.

## I.  JURISDICTION

     I have jurisdiction over this matter under 15 U.S.C. § 1692k(d) (Fair Debt Collection Practices Act) and 28 U.S.C. §1331 (federal question).

---

[1] "[#20]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).[2] In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the

---

[2] The mere fact that both plaintiff and defendant have filed motions for summary judgment does not necessarily indicate summary judgment is proper. **See Atlantic Richfield Co. v. Farm Credit Bank of Wichita**, 226 F.3d 1138, 1148 (10th Cir. 2000). **See also Buell Cabinet Co. v. Sudduth**, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

## III. ANALYSIS

This case arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692. On April 5, 2017, plaintiff Elizabeth Lupia sought medical services from St. Francis Medical Center ("SFMC" or "the hospital") in Colorado Springs, Colorado. Ms. Lupia acknowledges she knew SFMC was not an in-network provider for her health insurer, Liberty Health Share ("LHS" or "the insurer").[3] On admission to SFMC, Ms. Lupia signed a Hospital Services Agreement, by which she acknowledged, *inter alia*,

> I understand that there is no guarantee of reimbursement or payment from any insurance company or other payor. I acknowledge full financial responsibility for, and agree to pay, all charges of the Hospital and of physicians rendering services not otherwise paid by my health insurance of other payor. Estimated patient responsibility is due at the time of service or following the medical screening exam. Any remaining charges are due and payable upon receipt of the bill.

(**Def. Motion App.**, Exh. B ¶ 6 at 1.)

After Ms. Lupia was seen at SFMC, the hospital submitted a bill for services rendered to her for $21,893.61. In July 2017, LHS tendered a check to SFMC in the amount of $7,154.36. On the back of that check, above the indorsement line, is printed the following:

---

[3] LHS is not a traditional health insurance provider. As described in the **Complaint** ([#1], filed April 24, 2019), LHS is "healthcare sharing ministry wherein members make monthly contributions which are then used to pay for the medical expenses of other members in need." *Id.* ¶ 18. ***See also*** healthinsurance.org, *What is a health care sharing ministry?* (available at: https://www.healthinsurance. org/glossary/health-care-sharing-ministry/) (last accessed April 10, 2020) ("Health care sharing ministries are non-insurance entities in which members share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs.") (citation and internal quotation marks omitted).

> PAYMENT IS TENDERED ON BEHALF OF THE COST
> SHARING MINISTRY MEMBER IN FULL SETTLEMENT OF
> ALL CHARGES FOR FACILITY MEDICAL BILLS
> SUBMITTED ON THE STATED ACCOUNT.

(*Id.*, Exh. C at 2.)  Also included was an explanation of benefits, which states, in relevant part,

> Any medical expense from the program is tendered in full
> and final satisfaction of charges for medical services and
> treatment rendered, and deposit by recipient shall constitute
> and evidence accord and satisfaction of any discrepancy
> between expenses hereby paid and amounts charged for
> such services and treatment.

(*Id.*, Exh. C. at 3.)  Just below this statement, the document stated "Member Responsibility: $0.00."  (*Id.*)

SFMC applied this payment to Ms. Lupia's outstanding account, and in September 2017, sent Ms. Lupia a bill for the balance on the original amount, that is, $14,739.25.  Believing she owed nothing further, Ms. Lupia refused to pay this bill. Disagreeing with Ms. Lupia's assessment of her liability, on April 19, 2018, SFMC assigned the account to defendant Medicredit, Inc., for collection.  This lawsuit arises from those collection efforts.

On April 25, 2018, Medicredit sent Ms. Lupia a notice informing her the debt had been assigned to Medicredit for collection, outlining her options for resolution of the account, and advising that if she failed to dispute the validity of the debt within 30 days, Medicredit would assume the debt was valid.  (*Id.*, Exh. G at 1.)  In response, Ms. Lupia sent Medicredit a letter in which she disputed the validity of the debt "or any portion thereof."  She stated her position that SFMC's deposit of the check constituted acceptance of the amount tendered by LHS as full payment of the debt and demanded

4

all further telephone communication cease.[4]  However, she expressly invited further "written confirmation of [Medicredit's] actions to correct/rectify this matter," and said she "look[ed] forward to [Medicredit's] written response."  That letter, dated May 1, was postmarked on May 2  (*Id.*, Exh. I.)

The letter was stamped "received" by Medicredit on May 7.  However, due to the way in which the company processes non-certified mail such as Ms. Lupia's letter, it was not actually logged into Medicredit's system until May 10.[5]  Medicredit therefore placed a call to Ms. Lupia regarding the debt on May 8.  Ms. Lupia did not answer that call, and Medicredit left a voice mail.

Once Ms. Lupia's letter was logged, Medicredit sent her a letter, dated May 16, 2018, acknowledging receipt of her dispute and advising that the company was "investigating the matter."  The letter indicated "This communication is from a debt collector," referenced Ms. Lupia's account number, stated the "Balance Due on File" of $14,739.25, and invited Ms. Lupia to "contact our office" "[i]f [she had] any questions or concerns regarding the matter."  Nevertheless, the letter also affirmed "[t]here is no additional information or action needed from you at this time."  (*Id.*, Exh. J.)

These two contacts – the May 8 phone call and the May 16 letter – form the basis of all four counts brought in this lawsuit.  For the reasons that follow, I find and conclude that Ms. Lupia is entitled to summary judgment on her claims under 15 U.S.C. §§ 1692g(b) and 1692c(c) insofar as those claims are premised on the May 8 phone

---

[4]  Medicredit attempted to contact Ms. Lupia by phone on April 30, 2018, but she did not answer.

[5]  Medicredit states that non-certified letters are received at a PO box at the post office near its offices in Creve Couer, Missouri.  Such mail is then retrieved from the post office and forwarded to Medicredit's compliance division, which in turn places a hold on any account where the debtor has requested no further contact.

call.  As to all other claims raised herein, however, Medicredit is entitled to summary judgment.

## A.  STANDING

I begin by addressing Medicredit's suggestion that Ms. Lupia lacks standing to bring any claim related to the May 8 phone call because she suffered no actual damages .  Until recently, the issue appeared well-settled.  The Tenth Circuit has long recognized that the FDCPA creates statutory legal rights to be free from certain abusive debt collection practices, *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002), and affirmed that a plaintiff whose rights under the Act are violated has suffered injury-in-fact and otherwise meets the requirements of constitutional standing, *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006).

However, in *Spokeo, Inc. v. Robins*, – U.S. –, 136 S.Ct. 1540, 194 L.Ed.2d 365 (2016), the Supreme Court held that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [her] a statutory right and purports to authorize [her] to sue to vindicate that right." *Spokeo*, 136 S.Ct. at 1549.  To recover for such intangible harms, a plaintiff must show "a concrete injury even in the context of a statutory violation." *Id.  See also Summers v. Earth Island Institute,* 555 U.S. 488, 496, 129 S.Ct. 1142, 1151, 173 L.Ed.2d 1 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing.").  "A 'concrete' injury must be 'de facto'; that is, it must actually exist;" it must be "'real,' not "abstract." *Spokeo*, 136 S.Ct. at 1548.  When a procedural right protects a concrete interest, a violation of that right may create a sufficient "risk of real harm" to the underlying interest to "satisfy the

requirement of concreteness." *Id.* at 1549. Courts thus understand *Spokeo* "to instruct that an alleged procedural violation . . . manifest[s] concrete injury" if the violation actually harms or presents a material risk of harm to the underlying concrete interest. *Strubel v.Comenity Bank*, 842 F.3d 181, 190 (2nd Cir. 2016).

To assess whether an intangible harm constitutes an injury in fact, *Spokeo* directs courts to consider two factors. First, due deference should be given to the judgment of Congress in having "identif[ied] and elevat[ed]" an intangible harm as worthy of statutory protection. "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and "its judgment is . . . instructive and important." *Spokeo*, 136 S.Ct at 1549. Second, because the Article III case-or-controversy requirement "is grounded in historical practice," the court should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*

Although the Tenth Circuit has yet to confront this question, numerous other federal courts have found alleged violations of various rights guaranteed by the FDCPA to constitute injury-in-fact. *See St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 357-58 (3rd Cir. 2018); *Macy v. GC Services Limited Partnership*, 897 F.3d 747, 757 (6th Cir. 2018); *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 81 (2nd Cir. 2018); *Church v. Accretive Health, Inc*., 654 Fed. Appx. 990, 994-95 & n.2 (11th Cir. July 6, 2016). *Cf. Casillas v. Madison Avenue Associates, Inc*., 926 F.3d 329, 339 (7th Cir. 2019) Several district courts in this circuit have done likewise. *See Cooper v. Stephen Bruce & Associates*, 2019 WL 97826 at *4 (W.D. Okla. Jan. 3,

2019); ***Irvine v. I.C. Systems, Inc.***, 198 F.Supp.3d 1232, 1236 (D. Colo. 2016).

I have little trouble in finding that Ms. Lupia has asserted the violation of concrete rights the violation of which carries a real risk of harm to her interests, and thus that she has standing to pursue her claims. As aptly noted by the Second Circuit in ***Cohen***, "Congress enacted the FDCPA to protect against the abusive debt collection practices likely to disrupt a debtor's life;"

> Sections 1692e and 1692g further this purpose: the former secures a consumer's right to be free from false, deceptive, or misleading practices by debt collectors, and the latter requires a debt collector who solicits payment from a consumer to provide the consumer with a detailed validation notice so that he may confirm that he indeed owes the debt and its amount before paying it[.]

***Cohen***, 897 F.3d at 96 (internal citations and quotation marks omitted). ***See also Macy***, 897 F.3d at 757 ("The aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options. It is also to make the rights and obligations of a potentially hapless debtor as pellucid as possible.") (citation and internal quotation marks omitted). These sections thus protect consumers from, for instance, paying a debt which is not in fact owed, as well as from being subjected to abusive communications from debt collectors when liability has not been confirmed. Congress has recognized there is real risk of harm in allowing such practices to go unchecked. That interest is sufficiently concrete to confer standing.

Similarly, as regards section 1692c(c) of the FDCPA, "receiving a prohibited debt communication constitutes a real injury in and of itself." ***Swike v. Med-1 Solutions, LLC***, 2017 WL 4099307 at *4 (S.D. Ind. Sept. 15, 2017). In enacting the FDCPA, Congress recognized the real risk of mental distress that can accompany abusive debt

collection practices.  *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692 (8th Cir. 2017); *Schultz v. Southwest Credit Systems, LP*, 2017 WL 11457912 at \*6 (N.D. Iowa Oct. 13, 2017) (violation of consumer's "statutory right to be free from abusive attempts to collect on debt" "creates the risk of real, concrete harms").  Moreover, from a historical perspective, Ms. Lupia's claims under section 1692c(c) plainly are akin to a common law claim for invasion of privacy, most particularly that branch of the tort that protects individuals from unreasonable intrusion on their seclusion.  *See* RESTATEMENT (SECOND) OF TORTS § 652A(2)(a).  The risk that those interests will be harmed by the practices made illegal under the FDCPA is sufficiently real and concrete to satisfy the injury-in-fact requirement of standing.

For these reasons, I find and conclude that Ms. Lupia has asserted sufficiently concrete injuries-in-fact and has standing to pursue these claims.  I thus turn to those substantive matters.

## B.  COUNTS I & II: 15 U.S.C. §§ 1692g(b) & 1692c(c)

To state a claim for relief under the FDCPA, Ms. Lupia must prove four essential elements: (1) that she is a "consumer," 15 U.S.C. § 1692a(3); (2) that the debt in question arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5); (3) that Medicredit is a "debt collector," 15 U.S.C. § 1692a(6); and (4) that Medicredit violated, by act or omission, a provision of the FDCPA.  *Rhodes v. Olson Associates, P.C.*, 83 F.Supp.3d 1096, 1103 (D. Colo. 2015).  Medicredit does not seriously dispute that Ms. Lupia can prove the first three of these essential elements.  Instead, the only issue in this case is whether the summary

judgment evidence is sufficient to establish the various violations of the FDCPA alleged by Ms. Lupia.

Counts I and II of the complaint allege Medicredit violated sections1692g(b) and 1692c(c) of the FDCPA, respectively, by continuing to contact Ms. Lupia about the debt after receiving her written dispute.  Under section 1692g(b),

> if the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector.

15 U.S.C. §1692g(b).[6]  Section 1962c(c) of the FDCPA, provides, in relevant part,

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.

15 U.S.C. § 1692c(c).  The relevant question thus is whether Medicredit ceased "collection of the debt," in the case of section 1692g(b), and/or ceased communication "with respect to" the debt, in the case of section 1692c(c), after receiving Ms. Lupia's dispute.

A prerequisite of liability under section 1692g(b) is that the communication constitute an attempt to collect a debt.  *See Parker v. Midland Credit Management., Inc*., 874 F.Supp.2d 1353, 1358 (M.D. Fla. 2012) (letter which was merely informational

---

[6] There is neither evidence nor argument here that Medicredit provided Ms. Lupia with verification of the debt.  Nevertheless, "a debt collector can simply cease collection efforts if it does not wish to make a verification."  *Maynard v. Cannon*, 401 Fed. Appx. 389, 397 (10th Cir. Nov. 10, 2010)

was "not a communication in connection with debt collection"). Ms. Lupia insists that

because the May 16 letter states the "Balance Due on File" and the account number

and invites Ms. Lupia to call with any questions,[7] the "least sophisticated consumer"

would not clearly understand that Medicredit was not seeking to collect the debt.

*Ferree v. Marianos*, 1997 WL 687693 at *1 (10th Cir. Nov. 3, 1997) (under the FDCPA,

"the test is how the least sophisticated consumer – one not having the astuteness of a

'Philadelphia lawyer' or even the sophistication of the average, everyday, common

consumer – understands the notice he or she receives").[8]

I am not persuaded. Although Ms. Lupia implies the letter is fatally flawed for

failing to include a specific advisement that it is not an attempt to collect a debt, nothing

in the FDCPA or the cases interpreting it presumptively requires such language be

included. Nor does the least sophisticated consumer standard absolve a consumer

from being required to consider the entirety of the communication she receives. Even

"the least sophisticated consumer can be presumed to possess a rudimentary amount

of information about the world and a willingness to read a collection notice with some

care." *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2nd Cir. 1993)) (internal

---

[7] Although Ms. Lupia also points to the letter's inclusion of the advisement that "This communication is from a debt collector," such a statement is required by law, as her counsel surely must know. *See* 15 U.S.C. §1692e(11); *Garrett v. BNC Mortgage, Inc.*, 929 F.Supp.2d 1120, 1127 n.6 (D. Colo. 2013) (noting it is misleading *per se* for debt collector to fail to include such an advisement in its initial written communication with the consumer).

[8] Most courts employ the least sophisticated consumer test in analyzing FDCPA claims. *See Hamilton v. Capio Partners, LLC*, 237 F.Supp.3d 1109, 1113 (D. Colo. 2017). Although the Tenth Circuit has applied this test in two cases, *see Fouts v. Express Recovery Services, Inc.*, 602 Fed .Appx. 417, 421 (10th Cir. Feb, 3, 2015); *Ferree*, 129 F.3d 130 at *1, it has never definitively addressed whether the standard applies in FDCPA cases, *see Hamilton*, 237 F.Supp.3d at 1113. The Supreme Court has not found occasion to resolve the issue definitively either. *Sheriff v. Gillie*, – U.S. –,136 S.Ct. 1594, 1602, 194 L.Ed.2d 625 (2016).

quotation marks omitted). *See also Kalebaugh v. Berman & Rabin, P.A.*, 43 F.Supp.3d 1215, 1220 (D. Kan. 2014) ("[W]hile the least sophisticated consumer test protects the naïve and credulous, the courts apply this standard in a way that also protects debt collectors against liability for unreasonable misinterpretations of collection notices.") (citation and internal quotation marks omitted).

Here, the May 16 letter advised Ms. Lupia that Medicredit had "received your dispute in regard to your account with [SFMC] and [was] currently investigating the matter." Although the letter did invite Ms. Lupia to call with any questions, it specifically stated that "[t]here is not additional information or action needed from you at this time." (**Def. Motion App.**, Exh. J.) Payment was not demanded and no payment terms or deadlines were stated. *See Parker*, 874 F.Supp.2d at 1358. Not even a wholly unsophisticated consumer could believe she was being asked to pay a debt when the letter is read in whole and in context, especially not when that consumer already had contested the validity of that debt and invited the debt collector to contact her in writing regarding its efforts to resolve the dispute. *See Ferree*, 1997 WL 687693 at *1; *Goodman v. Asset Acceptance LLC*, – F.Supp.3d –, 2019 WL 7037482 at *4 (D. Colo. Dec. 20, 2019).

As for Ms. Lupia's claims under section 1692c(c), although the May 16 letter arguably was a communication about the debt, *see* 15 U.S.C. § 1692a(2) ("communication" is the "conveying of information regarding a debt directly or indirectly to any person through any medium"), Ms. Lupia's May 1 letter expressly invited Medicredit to send "written confirmation of your actions to correct/rectify this matter."

(**Def. Motion App.**, Exh. I at 2.)  The May 16 letter plainly was responsive to that request.  Nothing in the FDCPA allows a consumer to invite communication from a debt collector and then recover damages when the debt collector responds within the boundaries of the authorized communication. For these reasons, Medicredit is entitled to summary judgment on Counts I and II insofar as they are premised on the May 16 letter.

As for the May 8 phone call, however, I find and conclude that Medicredit did violate these provisions of the FDCPA.  As the May 8 call plainly was an attempt to collect the debt, the only real issue is whether Medicredit can be deemed to have received Ms. Lupia's May 1 letter requesting Medicredit cease further telephone communications at the time it made that call.  Both section 1692g(b) and 1692c(c) require a debt collector to cease all collection activity once the consumer "notifies" the debt collector of her desire to receive no further communication.  As noted above, although the May 1 letter was marked "Received" on May 7, because of the way in which Medicredit processes its non-certified mail, it was not logged into Medicredit's system, and thus did not become effective to place a hold on Ms. Lupia's account, until May 10.

"Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."  **Johnson**, 305 F.3d at 1117.  In light of that directive, I must conclude that Medicredit received notice of the dispute on May 7.  In general, where the date of receipt of mail is disputed, there is a rebuttable presumption that an item placed in the mail is received within five days.  **Lozano v. Ashcroft**, 258 F.3d 1160, 1165 (10th

Cir. 2001).  Thus, having placed her letter in the mail on May 2, Ms. Lupia could reasonably expect it would be received, as indeed it was, by May 7.

Moreover, May 7, 2018, was a Monday; May 10 was a Thursday.  This therefore is not an instance where mail was received late on a Friday without an opportunity to log it until the next business day, and Medicredit offers nothing to explain the rather substantial lapse of time between when the letter was marked received and when it was logged.  Medicredit certainly is entitled to handle its mail in any way it deems fit, but it also must bear the risk that those procedures may be inadequate in a given instance.  I thus find and conclude that the May 1 letter was received by Medicredit on May 7.  The May 8 call therefore violated the FDCPA.

Medicredit claims that even if the May 8 call violated the FDCPA, the violation is excusable under the bona fide error defense.  Under the FDCPA,

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). To prove this affirmative defense, Medicredit must establish that its violation was "(1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the violation."  *Johnson*, 305 F.3d at 1121 (internal quotation marks omitted).

The first prong of this test is subjective.  *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006).  "[A] violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the

14

Act." *Id.* Whether a debt collector's assertion that it did not intend to violate the law is credible may be informed by consideration of the other two, objective prongs of the test. *Id.* at 728-29 ("[T]he extent to which [a debt collector] should have objectively realized that his actions were in violation of law may be inferentially probative of the subjective intentional nature of that violation."). The second, bona fide error element "serves to impose an objective standard of reasonableness upon the asserted unintentional violation." *Id.* at 729 (citation and internal quotation marks omitted). "An error is bona fide if it was made in good faith – that is, a genuine mistake, as opposed to a contrived mistake."[9] *Reynolds v. Collectioncenter, Inc.*, 2016 WL 759215 at *5 (D. Colo. Feb. 26, 2016) (citation and internal quotation marks omitted). The final element of the test regarding procedures "involves a two-step inquiry: first, whether the debt collector 'maintained' – i.e., actually employed or implemented – procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson*, 443 F.3d at 729.

There seems to be no genuine dispute of material fact that Medicredit did not subjectively intend to violate the FDCPA in placing the May 8 call and that its mistake in doing so was genuine. Nevertheless, and although it maintained procedures designed

---

[9] Citing law from outside this circuit, Ms. Lupia suggests only clerical errors constitute bona fide errors under this prong. While that interpretation prevails elsewhere, it is not the law in this circuit. *Johnson*, 305 F.3d at 1123. While counsel is certainly free to argue that the law should be otherwise, "officers of our court have an unfailing duty to bring to our attention the most relevant precedent that bears on the case at hand – both good and bad – of which they are aware." *In re Murray*, 586 Fed. Appx. 477, 482 n.1 (10th Cir. Nov. 18, 2014) (citation and internal quotation marks omitted). *See also Hill v. Norfolk & Western Railway Co.*, 814 F.2d 1192, 1198 (7th Cir.1987) ("The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless."); *Wallic v. Owens-Corning Fiberglass Corp.*, 40 F.Supp.2d 1185, 1190 (D. Colo. 1999) ("[A]n attorney has an ethical responsibility . . . to be honest with the court.").

to avoid calling debtors who had requested not to be contacted, it has failed to establish

that those procedures were reasonably adapted to avoid the error that occurred in this

case. Specifically, no reasonable jury could find a procedure which inexplicably allows

a three-day lag between receipt of a debtor's dispute and logging that dispute into the

system so that it is recognized and honored to be reasonably adapted to prevent

unauthorized contact with the debtor. Accordingly, Ms. Lupia is entitled to summary

judgment on this aspect of her claims under sections 1692g(b) and 1692c(c).

### C. COUNTS III & IV: 15 U.S.C. § 1692e(2)(A) & e(10)

In Counts III and IV, Ms. Lupia alleges Medicredit violated section 1692e of the

FDCPA. This section provides generally that "[a] debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection of

any debt." 15 U.S.C. § 1692e. It is a violation of this section to falsely represent "the

character, amount, or legal status of any debt," *id.* § 1692e(2)(A), or to use "any false

representation or deceptive means to collect or attempt to collect any debt," *id.* §

1692e(10). Ms. Lupia claims Medicredit violated these provisions by asserting that she

owed a debt which had been satisfied in full.

More specifically, Ms. Lupia maintains that SFMC accepted LHS's check as full

payment for the debt, and thus an accord and satisfaction was reached, absolving her

of liability for further payments. "An accord is a contract under which an obligee

promises to accept a stated performance in satisfaction of the obligor's existing duty.

Performance of the accord discharges the original duty." *R.A. Reither Construction,*

*Inc. v. Wheatland Rural Electric Association*, 680 P.2d 1342, 1344 (Colo. App.

1984).  ***See also F.D.I.C. v. Inhofe***, 16 F.3d 371, 374 (10th Cir. 1994) ("Accord and

satisfaction, then, is the substitution of another agreement between the parties in

satisfaction of the former one, and an execution of the latter agreement.").  Whether the

elements of an accord and satisfaction are present is a question of fact.  ***See Federal***

***Lumber Co. v. Wheeler***, 643 P.2d 31, 37 (Colo.1981).

Under Colorado law, whether acceptance of a negotiable instrument[10] constitutes

an accord and satisfaction is governed by article 3 of Colorado's Uniform Commercial

Code.  ***See*** §§4-3-102(a) & 4-3-104, C.R.S.[11]  Specifically, section 4-3-311 provides, in

relevant part,

> If a person against whom a claim is asserted proves that (I)
> that person in good faith tendered an instrument to the
> claimant as full satisfaction of the claim, (ii) the amount of
> the claim was unliquidated or subject to a bona fide dispute,
> and (iii) the claimant obtained payment of the instrument,

§4-3-311(a), C.R.S.  "[T]he claim is discharged if the person against whom the claim is

asserted proves that the instrument or an accompanying written communication

contained a conspicuous statement to the effect that the instrument was tendered as full

satisfaction of the claim." §4-3-311(b), C.R.S.  The burden is on Ms. Lupia to prove that

an accord and satisfaction was reached.  ***See*** §4-3-311, C.R.S., cmt. 4.

---

[10] "A check is a negotiable instrument." ***Georg v. Metro Fixtures Contractors, Inc.***,178 P.3d 1209, 1212 (Colo. 2008).

[11] It is not clear whether, in analyzing the question of accord and satisfaction, the court should look to state law or federal common law, and the parties do not address the issue directly.  However, the common law elements of accord and satisfaction have been codified in the Uniform Commercial Code. ***Curtin v. United Airlines, Inc.***, 120 F.Supp 2d 73, 76 (D.D.C. 2000), ***aff'd***, 275 F.3d 88 (D.C. Cir. 2001), which Colorado has adopted.  Moreover, the elements under both rubrics track closely in any event. ***See Valley Asphalt, Inc. v. Stimpel Wiebelhaus Associates***, 3 Fed. Appx. 838, 839-40 (10th Cir. Feb. 5, 2001) (elements of accord and satisfaction are "(1) a bona fide dispute over an unliquidated claim amount; (2) a check tendered in full settlement of the claimed amount; and (3) acceptance of the payment.").  I thus do not resolve this issue but note merely that the result would be the same in either case.

Medicredit claims Ms. Lupia cannot meet the first requirement: that the check was tendered in good faith.  I agree.  Under the UCC, "'[g]ood faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." § 4-3-103(a)(4), C.R.S.  The comments to section 4-3-311 posit as an example of a lack of good faith

> the practice of some business debtors in routinely printing full satisfaction language on their check stocks so that all or a large part of the debts of the debtor are paid by checks bearing the full satisfaction language, whether or not there is any dispute with the creditor.  Under such a practice the claimant cannot be sure whether a tender in full satisfaction is or is not being made.  Use of a check on which full satisfaction language was affixed routinely pursuant to such a business practice may prevent an accord and satisfaction on the ground that the check was not tendered in good faith under subsection (a)(I).

§4-3-311, C.R.S., cmt. 4.

Although it is not clear that the inclusion of accord and satisfaction language on its checks was LHS's standard business practice, the language plainly appears to be pre-printed on the check, suggesting such may be the case.  Therefore, it is some evidence of a lack of good faith.  However, Ms. Lupia, whose burden of proof it is to show good faith, offers nothing to countermand this suggestion.  She does not show, for instance, that LHS included this endorsement only on checks where it had a bona fide dispute about the amount of payment, or indeed offer any evidence suggesting how LHS concluded that the submitted charges were not fully compensable.  That Ms. Lupia at the time of her admission to SFMC signed an agreement wherein she "acknowledge[d] full financial responsibility for, and agree[d] to pay, all charges . . . not otherwise paid by my health insurance" also weighs against a finding of good faith,

which Ms. Lupia has not rebutted with any competent evidence.

For similar reasons, Ms. Lupia also has failed to adduce evidence to suggest that the dispute over the amount of the debt was bona fide. Although the term "bona fide dispute" is not defined in the statute, the Latin phrase "bona fide" literally means "in or with good faith." BLACK'S LAW DICTIONARY at 177 (6th ed.1990).[12] Ms. Lupia has failed to adduce any evidence to substantiate a finding that LHS's payment of barely one-third of the cost of services rendered to Ms. Lupia by SFMC was based on a good faith dispute as to the reasonable value of those services.

As Medicredit notes, Colorado allows the practice of balance billing where, as here, the patient intentionally seeks treatment from an out-of-network provider. §§10-16-704(2)(f)(I) & (3)(a)(IV), C.R.S. In addition, Ms. Lupia expressly agreed to pay any balance not covered by insurance. Because Ms. Lupia has failed to establish that LHS's partial payment constituted an accord and satisfaction, it was not inappropriate for SFMC to bill her for the difference between what LHS paid and the full cost of the services rendered. By extension, it was not false for Medicredit, on behalf of SFMC, to state that Ms. Lupia owed that debt.[13] Accordingly, Medicredit is entitled to summary judgment as to Counts III and IV.

---

[12] In the context of bankruptcy law, a dispute is bona fide where "there is an objective basis for either a factual or a legal dispute as to the validity of debt." *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir. 1988).

[13] Given my resolution of this issue, I do not consider Medicredit's defense that it was entitled to rely on the information provided to it by SFMC.

## IV. ORDERS

For these reasons, Medicredit is entitled to summary judgment on Counts III and IV in their entirety, as well as that aspect of Counts I and II which is premised on the May 16 letter.  Ms. Lupia is entitled to summary judgment on that aspect of Counts I and II premised on the May 8 phone call.  Because Ms. Lupia did not seek summary judgment on the issue of damages, that matter remains for trial to a jury.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendant Medicredit, Inc.'s Motion for Summary Judgment** [#20], filed February 18, 2020, is granted in part and denied in part, as follows:

a.  That the motion is granted as to Counts I and II insofar as those claims are premised on the May 16 letter, and that aspect of those claims is dismissed with prejudice;

b.  That the motion is granted further as to Counts III and IV, and those claims are dismissed with prejudice; and

c.  That the motion is denied in all other respects;

2.  That **Plaintiff's Motion for Summary Judgment** [#22], filed February 21, 2020, is granted in part and denied in part as follows:

a.  That the motion is granted as to Counts I and II insofar as those claims are premised on the May 8 phone call; and

b.  That the motion is denied in all other respects;

3.  That **Plaintiff's Motion for Leave To File Surreply or, in the Alternative, for Leave To Supplement Her Response to Defendant's Motion for Summary**

**Judgment** [#28], filed April 1, 2020, is denied as moot;

    4.  That at the time judgment enters, judgment shall enter on behalf of plaintiff, Elizabeth Lupia, against defendant, Medicredit, Inc., on Counts I and II insofar as those claims are premised on the May 8 phone call; and

    5.  That at the time judgment enters, judgment with prejudice shall enter on behalf of defendant, Medicredit, Inc., against plaintiff, Elizabeth Lupia, as to Counts I and II insofar as those claims are premised on the May 16 letter, and as to Counts III and IV in their entirety.

    Dated April 13, 2020, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge