**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 19-cv-01209-REB-KMT

ELIZABETH LUPIA,

      Plaintiff,

v.

MEDICREDIT, INC.,

      Defendant.

---

## ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

---

**Blackburn, J.**

      The matter before me is **Plaintiff's Motion for Attorney's Fees** [#46],[1] filed

August 31, 2020.  I grant the motion in part as set forth herein.

      Plaintiff, Elizabeth Lupia, claimed defendant, Medicredit, Inc., violated the Fair

Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by virtue of two

communications with her in an attempt to collect an alleged debt.  I granted summary

judgment in favor of Ms. Lupia on her claims under 15 U.S.C. §§ 1692g(b) and 1692c(c)

to the extent they were based on a May 8, 2018, phone call made after Ms. Lupia

requested Medicredit cease communication with her.  However, I granted summary

judgment in favor of Medicredit to the extent these claims were premised on a May 16,

2018, letter regarding the debt.  I also granted Medicredit's motion for summary

judgment as to Ms. Lupia's claims under 15 U.S.C. §§ 1692e(2)(A) and e(10) alleging

---

[1] "[#46]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this
convention throughout this order.

these two communications constituted false or misleading representations regarding the debt.  (*See* **Order Re: Cross-Motions for Summary Judgment** [#30], filed April 13, 2020.)  Following Medicredit's unsuccessful bid for reconsideration of that portion of my order in favor of Ms. Lupia (*see* **Order Denying Motion To Reconsider** [#36], filed June 10, 2020), the parties stipulated to damages in the amount of $1,000 ([#37-1], filed August 5, 2020).  Ms. Lupia now seeks attorney fees of $31,915 for 113.6 hours of work on the case.

The generally applicable "American Rule" provides that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *see also Federal Trade Commission v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006).  Courts may not deviate from this rule "absent explicit statutory authority."  *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 602, 121 S.Ct. 1835, 1839, 149 L.Ed.2d 855 (2001) (citation and internal quotation marks omitted).  *See also Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126, 135 S.Ct. 2158, 2164, 192 L.Ed.2d 208 (2015).  The FDCPA provides such explicit authority, however, *see* 15 U.S.C. § 1692k(a)(3), and Medicredit does not dispute that Ms. Lupia is entitled to such an award as the prevailing party in this litigation.

The starting point for any calculation of a reasonable attorney fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76

L.Ed.2d 40 (1983); ***Malloy v. Monahan***, 73 F.3d 1012, 1017-18 (10th Cir. 1996).  Ms.

Lupia requests compensation for her two attorneys, Russell Thompson and Amorette

Rinkleib, at an hourly rate of $350 and $300, respectively.  Medicredit does not contest

the reasonableness of these requested rates, and the rates are consonant both with

what other consumer law attorneys in Colorado charge (***see* Motion App.**, Exh. B at

82),[2] and what courts in this district have approved in similar cases, ***see Baruth v.***

***Stellar Recovery, Inc.***, 2018 WL 2316639 at *2 (D. Colo. March 19, 2018); ***Gooley v.***

***Stellar Recovery, Inc.***, 2016 WL 4702060 at *2 (D. Colo. Aug. 23, 2016); ***Sandoval v.***

***Stellar Recovery, Inc.***, 2016 WL 74941 at *1 (D. Colo. Jan 7, 2016); ***Harper v. Stellar***

***Recovery, Inc.***, 2015 WL 7253239 at *2 (D. Colo. Nov. 16, 2016); ***Hedge v. Dynamic***

***Recovery Services, Inc.***, 2014 WL 1016812 at *4 (D. Colo. Mar. 14, 2014).  The

requested rate of $100 an hour for paralegal services also is consistent with rates which

have been approved in this district.  ***See Pirera v. Sullivan Kline Group, LLC***, 2019

WL 4201500 at *4 (D. Colo. Sept. 5, 2019); ***Hughs v. Oxford Law, LLC***, 2018 WL

4257319 at *5 (D. Colo. Sept. 6, 2018); ***Home Loan Investment Co. v. St. Paul***

***Mercury Insurance Co.***, 78 F.Supp.3d 1307, 1319 (D. Colo. 2014), ***amended on other***

***grounds***, 2014 WL 7187153 (D. Colo., Dec. 17, 2014), ***aff'd***, 827 F.3d 1256 (10th Cir.

July 5, 2016).  I therefore use these hourly rates as the starting point of the lodestar

analysis.

---

[2] This exhibit is the 2017-2018 United States Consumer Law Attorney Fee Survey Report.  Courts in this district look to this report for guidance in determining a reasonable hourly rate.  ***See Rodriguez v. Luchey & Mitchell Recovery Solutions, LLC***, 2013 WL 6068458 at *2 (D. Colo. Nov. 18, 2013).

The other component of the lodestar is a determination of the reasonable number of hours spent on the litigation.  In making this determination, the court must ensure the applicant has exercised the same "billing judgment" as would be proper in setting fees for a paying client.  **Hensley**, 103 S.Ct. at 1941; **Malloy**, 73 F.3d at 1018.  "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  **Hensley**, 103 S.Ct. at 1940 (citation and internal quotation marks omitted; emphases in original).  Counsel therefore must make a good faith effort to exclude hours that are "excessive, redundant or otherwise unnecessary." **Id**. at 1939-40.[3]

The billing records submitted by counsel for Ms. Lupia reveal an intelligent and appropriate division of labor between the senior and junior attorneys, as well as between the attorneys and the paralegals, assigned to this matter.  They also are a model of detail and specificity.  Even entries that are block-billed, which in other circumstances might lead the court to question counsel's billing judgment, **see Robinson v. City of Edmond**, 160 F.3d 1275, 1284 (10th Cir.1998), have been broken out so the court can discern the amount of time devoted to each aspect of the total

_____

[3]  Medicredit misreads the court's opinion in **Sedillo v. Long View Systems Co. (USA)**, 2020 WL 869855 (D. Colo. Feb. 20, 2020), in suggesting Ms. Lupia should be denied fees because she has failed to prove their reasonableness by reference to the various factors cited therein.  As the court there noted,

> [c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.

**Id.** at *5 (quoting **Case v. Unified School District No. 233, Johnson County, Kansas**, 157 F.3d 1243, 1250 (10th Cir. 1998)).  Ms. Lupia has submitted such records, and the court is tasked with determining whether they reflect proper billing judgment *vel non.*

billed amount. Counsel's representation that they exercised billing judgment is reflected also in the waiver of fees attributable to various clerical or administrative tasks performed by the paralegals, which are not compensable. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 2471 n.10, 105 L.Ed.2d 229 (1989).

Nevertheless, I have identified several discrete areas where I believe further reductions in the hours requested should be made. *See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) ("[A] "judge is not obligated to accept the fee applicant's billing judgment uncritically."). Given the superior nature of counsel's billing records, I find it appropriate to deduct the specific hours I have identified. *Varley v. Midland Credit Management, Inc.*, 2012 WL 2107969 at *2 (D. Colo. June 11, 2012) ("Where an attorney has failed to exercise billing judgment, the court may do so for him by striking problematic entries or by reducing the hours requested by a percentage intended to substitute for the exercise of billing judgment.").

I thus will subtract an additional 3 hours of paralegal time for additional administrative and/or clerical matters. I also will deduct 3.5 hours of Ms. Rinkleib's time attributable to travel to and from Colorado Springs for Ms. Lupia's deposition.[4] I will deduct as administrative the .5 hours which Ms. Rinkleib spent Bates stamping documents on December 24, 2019, and the total .3 hours she claims for checking in with her client about her availability for deposition (12/12/19) and trial (5/18/20).

---

[4] Attorney travel time may be compensable, albeit at a reduced rate, if the party seeking recovery of such fees establishes her travel time was productive. *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098, 1106 (10th Cir. 2010). Counsel makes no such showing here. *See Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) ("No compensation is due for nonproductive time.") (internal citation and quotation marks omitted).

Likewise, I deduct .3 hours Mr. Thompson reportedly spent reviewing various court orders "to ensure everything is properly diaried."  I also deduct .1 hours of Ms. Rinkleib's time for a February 3, 2020, entry which reads, simply, "see (19) Order Extending Dispositive Motion Deadline to 2.21," and a similarly vague entry by Mr. Thompson for .1 hours reported on June 3, 2019, merely as "see (7) Corporate Disclosure Statement."  *See Latin v. Bellio Trucking, Inc.*, 720 Fed. Appx. 908, 911 (10th Cir. 2017) (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)).

Finally, I note a number of entries from Ms. Rinkleib claiming .1 or .2 of an hour for simply leaving a voice message for either the client or opposing counsel.[5]  Courts deny or reduce compensation for attorney time that involves no more than leaving a message, whether because the work is considered clerical, *see Snider v. Peters*, 928 F.Supp.2d 1113, 1117 (E.D. Mo. 2013), *aff'd*, 752 F.3d 1149 (8th Cir. 2014), counsel failed to show the conveyance of any substantive legal advice, *see O.R. v. New York City Department of Educ*ation, 340 F.Supp.3d 357, 368 (S.D.N.Y. 2018), or the amount of billed time was excessive for the task simply leaving a message, *see Alfonso v. Aufiero*, 66 F.Supp.2d 183, 196 (D. Mass. 1999).  Any and all these reasons are sufficient to disallow this time, and I will do so.

I note also that in several instances, Ms. Rinkeib sent a confirmation email after having left a voicemail message, which is redundant and will be disallowed on that basis.  *Hensley*, 103 S.Ct. at 1039-40.  *See also Garcia v. Midland Credit*

---

[5]  This category includes, but is not limited to, a significant number of entries between July 18 and September 2, 2019, in which it appears Ms. Rinkleib was playing phone tag with Ms. Lupia regarding a settlement proposal.  Another tranche of entries between March 27 and April 3, 2019, records a similar series of unsuccessful attempts to contact Ms. Lupia's insurer.

*Management Inc.*, 2015 WL 4911544 at *2 n.4 (D. Colo. Aug. 18, 2015). Other entries, noted simply as "sent fu [follow up]," will be disallowed as too vague. *Latin*, 720 Fed. Appx. at 911. All together, I have identified 2.5 hours of Ms. Rinkleib's time attributable to these tasks and will deduct that time from the request.

I thus find and conclude that Mr. Thompson's requested hours should be reduced by .4 hours, Ms. Rinkleib's by 6.9 hours, and the paralegals' by 3 hours. This leaves 17.9 compensable hours for Mr. Thompson's work on the case, 73 compensable hours for Ms. Rinkleib's work, and 12.4 compensable paralegal hours. At the reasonable hourly rates approved herein, the lodestar amount is $29,405.[6]

The lodestar presumptively represents the amount of attorney fees to which a party is entitled. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010); *Homeward Bound, Inc.*, 963 F.2d at 1355. Nevertheless, Medicredit maintains the lodestar should be reduced by 75 percent because Ms. Lupia prevailed on only two of her four claims. Despite it arguments, I cannot find this case presents the rare and exceptional circumstance in which a downward adjustment of the lodestar is warranted. *See Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

Where a plaintiff ultimately prevails on only some of the claims she brought initially, the court first must determine whether it is possible to parse the successful from the unsuccessful claims. If a plaintiff's various claims implicate a core of common facts

---

[6] That figure is comprised of (1) 17.9 hours @ $350/hour = $6,265; (2) 73 hours @ $300/hour = $21,900; and (3) 12.4 hours @ $100/hour = $1,240.

or are based on related legal theories, the suit "cannot be viewed as a series of discrete claims" and the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." **Hensley**, 103 S. Ct. at 1940. **See also Flitton v. Primary Residential Mortgage, Inc**., 614 F.3d 1173, 1177 (10th 2010). By contrast, where one or more claims are unrelated to those on which the plaintiff ultimately succeeded, "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved:"

> The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

**Hensley**, 103 S. Ct. at 1940 (citation and internal quotation marks omitted). Thus, "[w]here the plaintiff has failed to prevail on a claim that is *distinct in all respects* from [her] successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." **Id**. at 1943 (emphasis added).

Although Medicredit insists Ms. Lupia's unsuccessful claims are factually and legally distinct from her successful ones, I am not persuaded. All Ms. Lupia's claims arose out of Medicredit's attempts to collect a debt which Ms. Lupia believed she did not owe. Both communications about which Ms. Lupia complained involved this same alleged debt, and she claimed both constituted attempts to contact her that violated the FDCPA, albeit for various reasons. I simply cannot parse these factually and legally intertwined claims as finely as Medicredit would have me do.

Accordingly, a reduction in the lodestar is warranted only if the overall relief Ms. Lupia obtained is insignificant in relation to the hours reasonably expended on the

litigation.  **See Hensley**, 103 S. Ct. at 1940.  I cannot so find here.  In recovering the

maximum amount of statutory damages permitted under the FDCPA, Ms. Lupia

achieved a high degree of success.  **See Tolentino v. Friedman**, 46 F.3d 645, 653 (7th

Cir.), **cert. denied**, 15 S.Ct. 2613 (1995); **Douyon v. NY Medical Health Care, P.C.**, 49

F.Supp.3d 328, 340 (E.D.N.Y. 2014).  The fact that she did not allege or prove any

actual damages is not unusual in cases under the statute, and it would run counter to

the purposes of the FDCPA to reduce the fee award simply because the recovery of

statutory damages is small in comparison to the amount of attorney fees:

> Especially for claims where the financial recovery is likely to
> be small, calculating attorneys fees as a proportion of
> damages runs directly contrary to the purpose of fee shifting
> statutes:  assuring that . . . claims of modest cash value can
> attract competent counsel.  The whole purpose of fee-
> shifting statutes is to generate fees that are *disproportionate*
> to the plaintiff's recovery."

**Millea v. Metro–North Railroad Co.**, 658 F.3d 154, 169 (2nd Cir. 2011) (emphasis in

original)**.  See also Yohay v. City of Alexandria Employees Credit Union, Inc.**, 827

F.2d 967, 974 (4th Cir.1987) (applying similar reasoning to claim under the Fair Credit

Reporting Act); **Kassim v. City of Schenectady**, 415 F.3d 246, 252 (2nd Cir. 2005);

**Douyon**, 49 F.Supp.3d at 340; **Tripp v. Berman & Rabin P.A.**, 2017 WL 2289500 at *7

(D. Kan. May 25, 2017); **Halecki v. Empire Portfolios, Inc.**, 952 F.Supp.2d 519, 521

(W.D.N.Y. 2013).

I note, too, that this was not a particularly easy or straightforward case.  Although

it appears from the billing records that settlement was discussed, for reasons not

apparent on the record, no settlement was reached.  Thereafter, it is this court's

impression from the motions submitted for determination that Medicredit prosecuted the case aggressively. For example, it elected to challenge Ms. Lupia's standing to bring her claims, an issue on which, although the Tenth Circuit has yet to speak decisively, a number of circuit courts, as well as district courts within the Tenth Circuit, have found adversely to Medicredit's position. (*See* **Order Re: Cross-Motions for Summary Judgment** at 7-8 [#30], filed April 13, 2020.) While it certainly was Medicredit's prerogative to make this a test case for the issue, that decision carries consequences. *See Garcia*, 2015 WL 4911544 at *2 & n.3. Similarly, after I granted summary judgment in Ms. Lupia's favor, Medicredit chose to file an ill-advised motion for reconsideration, which evidenced not only a misunderstanding of the burden of proof applicable to its bona fide error defense, but an apparent ignorance of the well-established standards for granting reconsideration. (*See* **Order Denying Motion to Reconsider** at 2-6 [#36], filed June 10, 2020.)

Given all these considerations, I cannot conclude that this case presents the rare exception in which further reduction of lodestar is warranted. I therefore grant Ms. Lupia reasonable attorney fees in the lodestar amount of $29,405.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiff's Motion for Attorney's Fees** [#46], filed August 31, 2020, is granted in part; and

2. That Ms. Lupia is awarded attorney fees of $29,405.

Dated May 19, 2021, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge